UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN BAAR,<br><br>      Plaintiff,<br><br>  v.<br><br>JAGUAR LAND ROVER NORTH AMERICA, LLC, and JAGUAR LAND ROVER LIMITED,<br><br>      Defendants. | Civ. No. 2:17-04142<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Brian Baar brings this class action against Jaguar Land Rover North America, LLC ("JLRNA") and Jaguar Land Rover Limited ("JLRL") (collectively "Defendants"), alleging violations of the Sherman Act, 15 U.S.C. § 1, various state antitrust and consumer protection laws and unjust enrichment, in connection with the imposition of Defendants' no-export policy at the point of sale of Defendants' products. This matter comes before the Court on Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**I.    BACKGROUND**

Plaintiff is a California resident who purchased one of Defendants' products, a 2015 Range Rover, from a dealership in Carlsbad, California on April 1, 2015. First Am. Compl. ("Compl.") ¶ 25, ECF No. 25. JLRNA is a Delaware company with its principal place of business in Mahwah, New Jersey. *Id*. ¶ 26. JLRL is the parent company of JLRNA and is incorporated under the laws of England and Wales, with its principal place of business in the United Kingdom. *Id*. ¶¶ 26–27. JLRL designs, develops and manufactures luxury cars and sport utility vehicles ("SUVs"), which it sells in the United States through JLRNA. JLRL also sells its products all over the world. *Id*. This dispute centers on a significant price differential of Defendants' products in foreign countries such as China. The following facts alleged in the Complaint are not in dispute.

Apparently, demand for luxury vehicles in certain foreign countries commands a sale price of Defendants' products three or four times greater than the price in the United

1

States. *Id*. ¶ 2. "[T]his price differential creates an arbitrage opportunity for Purchasers of JLR Vehicles in the United States who wish to have the ability to export them to foreign markets for resale at higher resale prices than in the United States." *Id*. ¶ 3. To protect their profit margins in these foreign markets, Defendants implemented a "No-Export Policy" (the "Policy") in April 2013. *Id*. The Policy requires that a purchaser agree to the following at the time of sale: "(i) [he or she has] no intention of exporting the JLR Vehicle outside the United States for up to one year from the date of delivery; (ii) if the JLR Vehicle is exported (even by subsequent purchasers), the Purchaser is subject to liquidated damages ranging from $25,000 to $40,000, losses and expenses; and (iii) the warranty will be voided if the JLR Vehicle is exported." *Id*. ¶ 5.

Defendants required Plaintiff to sign "the No-Export Agreement" (the "Agreement") when he purchased his Range Rover. *Id*. ¶ 25. Plaintiff maintains that he "would have freely re-sold [*sic*] the JLR Vehicle for export within one year of delivery absent the No-Export Agreement." *Id*. Plaintiff alleges that the Agreement is non-negotiable and that every purchaser must sign it "at the end of the transaction process, after agreeing upon all financial terms of the transaction." *Id*. ¶ 46. Plaintiff also alleges that Defendants require their United States dealers to undertake certain actions of due diligence to enforce the Policy. Such actions include searching the vehicle purchase history of prospective purchasers, validating their addresses, searching for publicly available information on the internet, and determining the source of funds used to make the purchases. *Id*. ¶ 38.

Plaintiff alleges a conspiracy among Defendants, their dealers, and a third-party consulting company to violate the Sherman Act and unreasonably restrain trade through the enforcement of the Policy. *See id*. ¶¶ 48–58. Plaintiff claims, and Defendants do not deny, that the purpose and effect of the Policy "is to prevent Purchasers from taking advantage of an arbitrage opportunity that exists in foreign countries, such as China, to obtain and maintain higher profits abroad." *Id*. ¶ 59. Plaintiff submits that the relevant market affected by the Policy "is the market for exporting JLR Vehicles for resale." *Id*. ¶ 87. Plaintiff's Amended Complaint asserts five causes of action:

(1) Count 1: declaratory relief under 15 U.S.C. § 1, *id*. ¶¶ 118–25;
(2) Count 2: injunctive relief under 15 U.S.C. § 1, *id*. ¶¶ 126–32;
(3) Count 3: violation of 24 state antitrust laws, *id*. ¶¶ 133–37;
(4) Count 4: violation of 26 state consumer protection laws, *id*. ¶¶ 138–47; and
(5) Count 5: unjust enrichment under 48 States' common law, *id*. ¶¶ 148–50.

Defendants now move for dismissal of all claims. Defendants first argue that Plaintiff has failed to allege any concerted action to restrain trade between Defendants and other independent entities. *See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") 9–14, ECF No. 30. Defendants next argue Plaintiff's claims fail under a rule of reason analysis because Plaintiff fails to identify a cognizable relevant market and does not allege an antitrust injury incurred in the United States. *See id*. at 15–29. Defendants also argue

that Plaintiff lacks standing to pursue all state law claims other than his California claims and that his California antitrust claims fail for the same reasons as his federal antitrust claims. *See id*. at 29–31. Defendants further argue that Plaintiff's claim under the California Unfair Competition Law ("UCL") fails because he failed to allege fraudulent, unlawful or unfair conduct. *See id*. at 31–35. Finally, Defendants argue that Plaintiff's unjust enrichment claim fails because this Court previously determined that California does not recognize such claims. *See id*. 35–36.

Plaintiff counters, arguing first that the Court should reject Defendants' arguments on the merits because such arguments require the development of a factual record and are inappropriate at the dismissal phase of litigation. *See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. ("Pl.'s Opp'n) 8–10, ECF No. 31. Plaintiff next submits that he properly pleaded the existence of concerted action between Defendants, their dealers and the consulting company, as required by the Sherman Act. *See id*. at 11–16. Plaintiff contends that the Policy unreasonably restrains trade under both the *per se* and rule of reason analyses. Plaintiff argues that the Policy "reduces output by restraining U.S. sales of JLR Vehicles" and the relevant market is "the U.S. market for exporting JLR Vehicles for resale," in which Defendants "have market power." *See id*. at 17–26. Plaintiff submits that he properly alleged an antitrust injury through the restriction of Plaintiff's ability to export Defendants' products for resale. *See id*. at 26–28. Plaintiff further submits that a determination as to his standing to bring non-California based state law claims should be deferred until class certification. *See id*. 31–32. Finally, Plaintiff contends that he plausibly alleges his California claims for the same reasons as his federal claims and that unjust enrichment is a viable claim under California law. *See id*. at 32–40. Defendants filed a reply, in which they largely reiterate their prior arguments. *See* Defs.' Reply Mem. in Supp. of Mot. to Dismiss ("Defs.' Reply"), ECF No. 35.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542

F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id*.

### III. DISCUSSION

As an initial matter, the Court finds that the alleged facts of the instant case are not in dispute. Defendants do not deny that they maintain a no-export policy or that they make prospective purchasers agree to it at the time of sale. The only real dispute before the Court is whether the Policy violates federal and state antitrust laws by unreasonably restraining the resale of Defendants' products in foreign markets. Plaintiff's other state law and unjust enrichment claims are tethered to the alleged illegal antitrust conduct. The Court, therefore, rejects Plaintiff's contention that merits-based determinations as to his pleadings are untimely and inappropriate at the instant stage of litigation. *See Twombly*, 550 U.S. at 558 ("a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed") (internal quotation omitted). To the contrary, the Court finds that the undisputed facts lead to a straightforward conclusion: Plaintiff's antitrust claims fail because he fails to allege an illegal concerted action and to identify a cognizable relevant market under the rule of reason. Plaintiff's other claims suffer from the same fatal flaw and Defendant's motion, therefore, is granted.

#### A. Plaintiff's Sherman Act Claims (Counts 1 & 2)

"Section 1 of the Sherman Act prohibits '[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce.'" *Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.*, 838 F.3d 421, 441 (3d Cir. 2016) (quoting 15 U.S.C. § 1). "To establish a [§] 1 violation, a plaintiff must prove: (1) concerted action by the defendants; (2) that produced anticompetitive effects within the relevant product and geographic markets; (3) that the objects of the conduct pursuant to the concerted action were illegal; and (4) that it was injured as a proximate result of the concerted action." *Id*. (internal quotation and citation omitted).

1. The Rule of Reason Governs the Alleged Scheme.

Plaintiff makes a half-hearted argument that Defendants' alleged conduct is *per se* anticompetitive but falls short. *Per se* liability is reserved for conduct that is manifestly anticompetitive, such as a horizontal cartel among competing manufacturers or retailers to reduce output or fix a price. *See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 225 (citing *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007)). "[T]he legality of a vertical agreement that imposes a restriction on the dealer's ability to sell the manufacturer's product is governed by the rule of reason." *Id*. (citing *Leegin*, 551 U.S. at 907). The agreement at issue here is unquestionably vertical in nature between the manufacturer Defendants and their dealers. The rule of reason,

therefore, governs and Plaintiff's Complaint must properly allege the four factors described above. *See id*.

### 2. Plaintiff Fails to Allege a Concerted Action

Plaintiff alleges an antitrust conspiracy between Defendants, their dealers and a third-party consultant. First, with respect to the dealers, Plaintiff alleges that they "agree to comply with and enforce" the Policy by requiring purchasers of Defendants' vehicles to sign the no-export Agreement at the point of sale.[1] The dealers also perform various due diligence tasks at Defendants' direction. *See* Compl. ¶¶ 6–11. If they fail to comply adequately with the Policy, the dealers face substantial penalties and "even potential termination." *See id*. ¶ 12.

Plaintiff only alleges that the dealers comply with the Policy; he does not allege anywhere that the dealers actually conspired with Defendants to develop and implement the Policy. The Complaint makes clear that Defendants unilaterally implemented the Policy and required their dealers to enforce it. "Independent action is not proscribed. A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 760 (1984). Furthermore, "Department of Justice guidelines addressing vertical restraints have approved the argument that it is inappropriate to consider intrabrand restraints as 'agreements' to conspire and manufacturers are permitted to *unilaterally* impose appropriate restraints without giving rise to a cognizable antitrust violation[.]" *Int'l Logistics Grp., Ltd. v. Chrysler Corp.*, 884 F.2d 904, 907 (6th Cir. 1989) (quoting DOJ Vertical Restraint Guidelines § 2.1 at 6265) (emphasis original). Plaintiff, therefore, fails to allege concerted action between Defendants and their dealers.

Second, with respect to the consulting company, Wolf Consulting ("Wolf"), the Court does not agree that the hiring of a consultant to aid in the drafting of the Policy amounts to a concerted action under § 1. Defendants unilaterally decided to implement the Policy to preserve their prices in foreign markets. *After they made that decision*, Defendants then hired Wolf to draft a revised Policy. Wolf also allegedly conferred with one dealer as to the meaning of the Policy on one occasion. *See* Compl. ¶ 49. Wolf is not in the business of selling luxury SUVs; it is in the business of consulting. The fact that Defendants hired Wolf to assist in executing their business decision does not make that decision less one-sided and it certainly does not transform Wolf into a coconspirator to restrain trade. *See White v. R.M. Packer Co., Inc.*, 653 F.3d 571, 583 (1st Cir. 2011) (defendant's employment of a consultant "was entirely economically rational behavior" and such conduct "which the Supreme Court sought to protect from chilling effects")

---

[1] Plaintiff's argument that further consideration be given to purchasers in exchange for their consent not to export Defendants' vehicles is meritless. The simple fact is that either a purchaser agrees not to export his vehicle within twelve months of purchase or he leaves the dealership without a vehicle. Clearly, a purchaser's consent to the Agreement is a condition of sale regardless of whether the financial terms are agreed to before consent is given.

(citing *Monsanto*, 465 U.S. at 763). Plaintiff, therefore, fails to allege concerted action between Defendants and Wolf.

### 3. Plaintiff Fails to Identify a Cognizable Relevant Market.

Plaintiff also fails to satisfy the second factor under the rule of reason. "Plaintiffs have the burden of defining the relevant market." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (citation omitted). "'The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.'" *Id.* (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). "The term [i]nterchangeability implies that one product is roughly equivalent to another for the use to which it is put." *Mylan Pharm.*, 838 F.3d at 436 (internal quotations omitted). "It also means that while there might be some degree of preference for . . . one [product] over the other, either would work effectively." *Id.* (internal quotation omitted). "Moreover, products need not be perfectly fungible to be considered reasonably interchangeable for market-definition purposes." *Id.* "Cross-elasticity of demand is a measure of the substitutability of products from the point of view of buyers. More technically, it measures the responsiveness of the demand for one product [X] to changes in the price of a different product [Y]." *Id.* at 437. "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." *Queen City Pizza*, 124 F.3d at 436 (citation omitted).

Plaintiff identifies the relevant market for Defendants' products as a resale market of one: "the U.S. market for exporting JLR Vehicles for resale." *See* Pl.'s Opp'n at 21. Plaintiff argues that the export market is a "unique" market because Defendants' SUVs "have particular, historically recognized characteristics which make them unique to consumers." *See id.* at 22–23. "Consumers recognize JLR Vehicles' long-standing reputation as dependable, rugged, all-terrain, expeditionary vehicles." *Id.* at 23. For their part, Defendants argue that Plaintiff's market definition is insufficient because it fails to account for the fact that they "face stiff competition for sales from other manufacturers of cars and sports utility vehicles." *See* Def.'s Mem. at 19–20. Furthermore, Plaintiff "does not account for other vehicles that he or others might want to export from the United States." *Id.* at 20.

The Court agrees with Defendants. With all due respect to the quality of Defendants' vehicles, they are not so "unique" as to be impervious to the greater luxury SUV primary and export markets in the United States. One need not think long or hard to arrive at other competing luxury SUV brands—*e.g.*, Lexus, BMW, Mercedes, Audi, Bentley, Porsche, Maserati, to name a few. While the Court finds it entirely possible that consumers prefer Defendants' products for a variety of reasons, consumer preference does

not transform an otherwise dynamic market with dozens of interchangeable and cross-elastic products into a singular market. *See Mylan Pharm.*, 838 F.3d at 436. As the Third Circuit has previously recognized, "[b]y defining the market so narrowly that it only includes defendants, plaintiffs' proffered geographic and product markets are unrealistic." *See Eichorn v. AT&T Corp.*, 248 F.3d 131, 147 (3d Cir. 2001). The same holds true here.

Accordingly, Plaintiff fails to allege a concerted action between Defendants, their dealers and Wolf. Plaintiff further fails to identify a cognizable relevant market. The Court also finds that any further attempt by Plaintiff to amend his pleadings would be futile, absent a dramatic shift in the alleged facts that would substantially alter the content of the Complaint. *See Banks v. Rozum*, 639 F. App'x 778, 784 (3d Cir. 2016) ("Finally, the District Court was within its discretion to dismiss the complaint with prejudice on the ground that granting leave to amend would have been futile."). Counts 1 and 2 of the Complaint, therefore, are **DISMISSED WITH PREJUDICE**.

### B. Plaintiff's Remaining State Law and Unjust Enrichment Claims

Count 3 of the Complaint alleges, "Defendants' unlawful anticompetitive conduct . . . constitutes a violation of federal antitrust laws and, therefore, constitutes violation of the state antitrust laws set forth herein." Compl. ¶ 134. Count 4 similarly alleges violations of various state consumer protection laws, citing Defendants' federal antitrust law violations as the underlying illegal conduct. *Id.* ¶ 139. It follows then that Plaintiff's state antitrust and consumer protection claims fail for the same reasons that his federal antitrust claims fail. Accordingly, Counts 3 and 4 are **DISMISSED WITH PREJUDICE**.

Finally, Count 5 alleges that Defendants were unjustly enriched "from their unlawful acts by the imposition of the JLR No-Export Policy." As set forth above, however, Plaintiff failed to allege that Defendants' actions were in fact unlawful under the Sherman Act. Plaintiff's unjust enrichment claim, therefore, must also fail. Accordingly, Count 5 is **DISMISSED WITH PREJUDICE**.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** and all counts are **DISMISSED WITH PREJUDICE**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 9, 2016**